IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| **BELINDA IDA SAGE,** ) | |
| ) | |
| Plaintiff, ) | Case No. 1:11CV00077 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | By: James P. Jones |
| **COMMISSIONER OF** ) | United States District Judge |
| **SOCIAL SECURITY** ) | |
| ) | |
| Defendant. ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff. Nora Koch, Acting Regional Chief Counsel, Region III, Adam Siry, Assistant Regional Counsel, Kenneth DiVito, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, for Defendant.*

In this social security case, I affirm the decision of the Commissioner.

I

Plaintiff Belinda Ida Sage filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 1381-1383f (West 2012). Jurisdiction of this court exists under 42 U.S.C.A. § 1383(c)(3).

Sage filed an application for SSI benefits on April 1, 2010. She claimed disability beginning April 1, 2002. Her claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") on May 31, 2011. The ALJ issued a decision denying Sage's claim on June 8, 2011. Sage sought review of the ALJ's decision by the Social Security Administration's Appeals Council. The Appeals Council denied Sage's request for review on September 16, 2011, thereby making the ALJ's decision the final decision of the Commissioner. Sage filed a complaint in this court seeking judicial review of the Commissioner's decision.

The parties have filed cross-motions for summary judgment, which have been briefed and orally argued. The case is ripe for decision.

II

Sage's challenge to the ALJ decision rests on her contention that the ALJ did not give proper consideration to the effect of her mental impairment on her disability. Sage does not challenge the ALJ's findings on her physical impairments. The court's review of the facts will, therefore, be limited to those related to Sage's mental status.

Sage was born in 1963 and was a "younger person" under the regulations at the time of the ALJ's decision. 20 C.F.R. § 416.963 (2011). She completed the

ninth grade.  She had previous work experience as a furniture sander/stainer in a furniture factory.

In her application for benefits, Sage described a range of daily activities. She stated that she prepared simple meals, did laundry, dusted, vacuumed and cared for her pets.  She shopped weekly and was able to drive a car.  She read, listened to the radio, and watched television.  She visited with her children and grandchildren on a weekly basis and talked on the phone daily with family and friends.

Sage's husband died on March 31, 2010.  She sought mental health treatment shortly thereafter.  On April 14, 2010, Sage saw Billie Hunt, LCSW. Her mood was depressed and anxious.  Her appearance and affect were appropriate.  Her flow of thought was normal, although her thought content was hopelessness.  She had good judgment and fair insight.  Hunt assessed Sage as having adjustment disorder with mixed emotional features and bereavement.  Hunt also determined a global assessment of functioning ("GAF") score of 65-70, indicating mild symptoms and generally good functioning.  Sage was seen by Pamela M. Somervell, M.D., on April 19, 2010 and assessed with adjustment disorder with mixed emotional features and insomnia.  Dr. Somervell prescribed drugs for the insomnia and encouraged Sage to continue counseling for her

adjustment disorder. On May 27th, Dr. Somervell changed her diagnosis to generalized anxiety disorder and prescribed additional medication.

On June 9, 2010, Sage was seen by Hunt. Sage reported that she was still very depressed but that the medication was helping with her insomnia and anxiety. Hunt assessed Sage as having recurrent major depression. On June 17th, Sage reported to Dr. Somervell that the medications were helping with her insomnia and anxiety. On August 18th, however, Sage stated that the medication was not helping her anxiety as much and wanted to increase her dosage. Dr. Somervell did increase her dosage.

On August 25, 2010, Sage saw Marcy Rosenbaum, LCSW. She appeared in no acute distress but her mood and affect were depressed. Sage stated she felt "stuck in her grief" over her husband. (R. at 249.) Her insight and judgment were good. Sage reported that her anxiety medication was "calming" for her. (*Id*.) Rosenbaum diagnosed Sage with moderate recurrent major depression.

At her September 9, 2010 appointment with Rosenbaum, Sage stated that she felt like she was having a panic attack every other day a couple of times a day. She also stated that she did not think the medication was working. Rosenbaum observed that Sage was in no acute distress and was alert and oriented, her mood and affect were depressed and her judgment and insight were good. Rosenbaum maintained her diagnosis. This state of affairs continued substantially unchanged

through October 21, 2010.  At that appointment, Sage reported an episode of blacking out and rated her depression 10/10.  Sage also stated that she wished she could go to bed and not wake up.  She continued to have panic attacks.  Her examination was the same as previous visits and Rosenbaum changed her assessment to moderate major depression, single episode, because Sage had no prior history of depression.

Also on October 21, Sage was seen by Dennis Dombrowski, M.D., and R.L. Merkel, M.D., via telemedicine.[1]  Sage was easily engaged and made steady eye contact.  Her affect was restricted and somewhat blunted.  Her thought processes appeared linear and logical.  Although her thought content included passive suicidal ideation in the form of not caring whether she woke up, she did not have any plans for self-harm or harm to others.  She had fair-to-good insight, and fair judgment and impulse control.  Drs. Dombrowski and Merkel diagnosed Sage with major depressive disorder, single episode, severe, without psychosis, and assessed a GAF score of 50.  They concluded that she would benefit with a more aggressive treatment approach pharmacologically and suggested that her medication be changed to Cymbalta.  On January 21, 2011, Sage saw Dr. Somervell and reported

---

[1] The doctors were associated with the Department of Psychiatry and Neurobehavioral Sciences at the University of Virginia.  At the time of the examination, Dr. Dombrowski was a resident and Dr. Merkel was the attending.  (R. at 276.)

that she had run out of her Cymbalta and her depression was worse after she ran out.

On March 29, 2011, Sage saw Rosenbaum again. She reported continued panic attacks and some suicidal thoughts. On April 12, 2011, Sage reported that her medications were helping with her anxiety "a whole lot." (R. at 301.) Her panic attacks had decreased and she had not had any recent suicidal ideations. She also reported that she had been talking to a man and gone on a couple of dates.

On April 28, 2011, Dr. Somervell and Rosenbaum jointly completed an assessment of Sage's functional abilities. They rated Sage as "fair" or better in all fifteen rated areas, and "good" or better in eleven of fifteen rated areas. They rated Sage as "unlimited/very good" in understanding, remembering, and carrying out simple and complex job instructions. (R. at 306-07.)

At her administrative hearing, Sage testified that she stayed in bed for two or three days and did not like to be out in the public. She said that the medications were helping her somewhat but not a lot. She stated that she saw Drs. Dombrowski and Merkel one time. In response to the hypothetical posed by the ALJ, the vocational expert testified that an individual of Sage's age, education and work experience, who could perform work at the light exertional level with various limitations, including only occasional interaction with the general public and limitation to simple routine, repetitive, unskilled work, could perform jobs that

exist in significant numbers in the national economy. Sage's attorney asked the vocational expert whether a GAF score of 50 was consistent with employment. The vocational expert responded that an individual with a GAF score of 50 is deemed unable to work.

In her decision, the ALJ concluded that Sage suffered from the following severe impairments: degenerative changes of the left knee, osteopenia, mild radiocarpal joint space narrowing of the right wrist, carpal tunnel syndrome, depression, and anxiety. The ALJ found that none of these impairments met or medically equaled a listed impairment. The ALJ found that Sage had the residual functional capacity ("RFC") to perform work at the light exertional level, with various limitations, including only occasional interaction with the public and performance of simple, routine, repetitive, unskilled tasks. Based on the vocational expert's testimony, the ALJ found that Sage could perform work existing in significant numbers in the national economy and was not disabled.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do

[her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.* The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Sage argues that the ALJ erred in finding that she is not disabled because the ALJ did not properly account for Sage's mental impairments in assessing her RFC. In particular, Sage argues that the ALJ erred in giving little weight to the opinions of Drs. Dombrowski and Merkel.

The ALJ did not err in according little weight to the opinions of Drs. Dombrowski and Merkel. In so doing, the ALJ noted that their opinion conflicted with the other evidence in the record, and in particular, the opinions of Sage's long-time treating physician and licensed clinical social worker. As the ALJ observed, Dr. Somervell and Rosenbaum, who had treated Sage consistently for some time, generally found that although Sage suffered from depression and anxiety, her limitations were mild to moderate. Drs. Dombrowski and Merkel, as reflected in their own clinical findings, made many of the same observations as Dr. Somervell and Rosenbaum but reached a more severe conclusion, a conclusion that

did not comport with their own recorded observations.  For these reasons, the ALJ did not err in discounting Drs. Dombrowski's and Merkel's opinions in making the RFC finding.

In addition, Drs. Dombrowski and Merkel were not treating physicians such that their opinions were entitled to great weight.  As Drs. Dombrowski and Merkel only examined Sage one time and did not have an ongoing treatment relationship with her, they are not treating physicians. *See* 20 C.F.R. § 416.902 (2011) ("Non-treating source means a physician . . . who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant].").

Sage also argues that the RFC was erroneous because it was based on an incomplete hypothetical posed to the vocational expert.  Sage argues that the vocational expert's hypothetical was incomplete because it did not include the opinions of Drs. Dombrowski and Merkel that Sage had a GAF score of 50.  Because I have found that the ALJ did not err in discounting the opinions of Drs. Dombrowski and Merkel, I find that the ALJ did not err in relying upon the hypothetical posed to the vocational expert.

Substantial evidence supports the ALJ's RFC determination.  The evidence showed that Sage's depression and anxiety were severe impairments but that they did not completely prevent her from engaging in substantially gainful work.  She cared for herself and her household, she sought treatment for her depression and

anxiety and responded to the drugs she was prescribed, and Dr. Somervell and Rosenbaum concluded that she could follow and carry out simple job instructions. The ALJ concluded that Sage's mental impairments were severe and included certain limitations in the RFC to reflect the effect of those impairments as shown by the evidence. *See* 20 C.F.R. §§ 416.927(e), 416.946(c) (2011).

### IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:  June 17, 2012

/s/  James P. Jones
United States District Judge